IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-02453-SKC

JUANA PORTILLO,

        Plaintiff,

v.

ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

---

## MEMORANDUM OPINION AND ORDER

This action is before the Court under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83(c), for review of the Commissioner of Social Security's ("Commissioner" or "Defendant") final decision denying Juana Portillo's ("Plaintiff") application for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The parties have consented to the Magistrate Judge's jurisdiction. [Dkt. 13.][1] The Court has carefully considered the Complaint [Dkt. 1], Plaintiff's Opening Brief [Dkt. 15], Defendant's Response Brief [Dkt. 19], the social security administrative record ("AR") [Dkt. 11], and applicable law. For the

---

[1] The Court uses two record-citation formats. The first is "[Dkt. __]" used to refer to documents e-filed in the CM/ECF electronic docket. The second is "[AR __]" used to refer to documents within the social security administrative record [Dkt. 11] by the administrative-record page numbers.

following reasons, the Court REVERSES and REMANDS the Commissioner's final decision for additional proceedings.

## A. BACKGROUND

Plaintiff applied for DIB and SSI in April 2016, alleging she became disabled on November 1, 2015, from osteoarthritis in her knees and hands, carpal tunnel syndrome, shoulder pain, and cervical degenerative disc disease. [AR 12-14]. The claim was initially denied, after a hearing, on October 9, 2018. [AR 9].

Plaintiff then appealed to the Appeals Council which denied the Request for Review. [AR 1-3]. The decision of the Administrative Law Judge ("ALJ") thus became the final decision of the Commissioner. 20 CFR § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993). Plaintiff now appeals the Commissioner's denial of her claim for DIB and SSI under the Social Security Act.

## B. DISABILITY FRAMEWORK

A person is disabled within the meaning of the Social Security Act "only if his physical and/or mental impairments preclude him from performing both his previous work and any other 'substantial gainful work which exists in the national economy.'" *Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *1 (D. Colo. Jan. 12, 2011) (quoting 42 U.S.C. § 423(d)(2).) "The mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months." *Id.* "[F]inding that a claimant is able

2

to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time." *Fritz v. Colvin*, 15–cv–00230–JLK, 2017 WL 219327, at *8 (D. Colo. Jan. 18, 2017) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994)).

The Social Security Regulations outline a five-step process to determine whether a claimant is disabled:

1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.  The ALJ must then determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.

3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.

4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.

5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

*Wilson*, 2011 WL 97234, at *2 (citing 20 CFR § 404.1520(b)–(f)); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988)). Impairments that meet a "listing" under the Commissioner's regulations (20 CFR § Pts. 404 and 416, Subpt. P, App. 1) and a duration requirement are deemed disabling at step three with no need to proceed

further in the five-step analysis. 20 CFR § 404.1520(a)(4) ("If we can find that you are disabled or not disabled at a step, we make our determination or decision and we do not go on to the next step").[2] Between the third and fourth steps, the ALJ must assess the claimant's residual functional capacity ("RFC"). *Id*. § 404.1520(e). The claimant has the burden of proof in steps one through four. The Commissioner bears the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

The ALJ followed the five-step process in rendering his Decision. [AR 14-22]. He determined Plaintiff met the insurance status requirement of the Social Security Act on March 31, 2019. [AR 14, finding 1]. At step one, he determined Plaintiff had not engaged in substantial gainful activity since November 1, 2015, which is the alleged onset date. [*Id*. at finding 2]. At step two, he found Plaintiff had various severe physical impairments including osteoarthritis in her bilateral knees, osteoarthritis in her bilateral hands, mild bilateral carpal tunnel syndrome, bilateral shoulder pain, and mild degenerative disc disease of the cervical spine. [*Id*. at finding 3]. At step three, he found Plaintiff did not meet an impairment or combination of impairments that are medically equal to the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [AR 15, finding 4]. The ALJ then found Plaintiff had an RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)
> except the claimant can only stand for 4 hours in an 8-hour day and sit
> for 6 hours in an 8-hour day. The claimant can never climb ladders,

---

[2] Throughout this opinion, while the Court cites to relevant sections of Part 404 of Title 20 of the Code of Federal Regulations containing the regulations relating to DIB, identical and parallel regulations are found in Part 416 of that same title relating to SSI benefits.

> ropes, or scaffolds, but can occasionally climb ramps and stairs. The claimant can frequently stoop and occasionally crouch, kneel and crawl. The claimant can bilaterally reach overhead on a frequent basis with the upper extremities and can handle bilaterally and finger bilaterally on a frequent basis. The claimant should never work around moving and/or dangerous machinery nor unprotected heights and never be exposed to extreme cold.

[AR 17.]

In determining this RFC, the ALJ considered the evidence of record, to include all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, based on the requirements of 20 C.F.R. §§ 404.1529 and 416.929, and SSR 16-3p; Plaintiff's hearing testimony; the testimony of Bruce Magnuson, an impartial vocational expert ("VE"); the opinions of Dr. Coleman, the state agency consultant; and treatment and medical records. [AR 17-20]. He also considered opinion evidence under 20 C.F.R. §§ 404.1527 and 416.927. [*Id.* at 17.]

At steps four and five, the ALJ found Plaintiff was unable to perform any relevant past work, was closely approaching advanced age, had a limited education, and was unskilled; however, the VE testified there were "jobs that exist in significant numbers in the national economy" that Plaintiff could do. The ALJ found Plaintiff had not been under a disability, and he denied Plaintiff's claim for DIB and SSI benefits. [AR 22].

## C. STANDARD OF REVIEW AND APPLICABLE LAW

In reviewing the Commissioner's final decision, the court is limited to determining whether the decision adheres to applicable legal standards and is

supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996) (citation omitted); *Angel v. Barnhart,* 329 F.3d 1208, 1209 (10th Cir. 2003). The court may not reverse an ALJ simply because it may have reached a different result based on the record, the question instead is whether there is substantial evidence showing that the ALJ was justified in his decision. *See Ellison v. Sullivan,* 929 F.2d 534, 536 (10th Cir. 1990). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007) (internal citation omitted).

Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan,* 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty,* 515 F.3d at 1070 (internal citation omitted). When a decision is not supported by substantial evidence it must be reversed. *Williams*, 844 F.2d at 750. Nevertheless, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan,* 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

## D. ANALYSIS

Plaintiff raises two issues: (1) "[t]he ALJ did not have valid reasons for failing to follow all of Dr. Coleman's restrictions;" and (2) "[t]he ALJ did not properly assess the evidence of medical improvement." [Dkt. 15 at p.3]. Because the first argument is sufficient on its own to warrant reversal, the Court declines to address the second argument. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the [administrative law judge's] treatment of the case on remand.").

Pertinent here, "RFC assessments by State agency medical . . . consultants . . . are to be considered and addressed in the decision as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." Social Security Ruling 96-6p, 1996 WL 374180, at *4 (July 2, 1996). These consultants are considered "highly qualified" and "experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1527(e)(2)(i). The ALJ must explain the weight given to the consultant in her written decision. *Id.* §§ 404.1527(e)(2)(H). "In evaluating RFC assessments prepared by state consultants, the ALJ follows the same process that applies to any opinion evidence, considering factors such as 'the supporting evidence in the case record.'" *Brown v. Colvin*, No. 4:12-CV-00247-FL, 2014 WL 1282255, at *15 (E.D.N.C. Mar. 27, 2014) (quoting 20 C.F.R. §§ 404.1527(a)-(d), 416.927(a)-(d)).

### 1. The ALJ's treatment of Dr. Coleman's Opinions

Dr. Coleman was the state agency consultant. He completed a physical residual functional capacity assessment dated October 24, 2016. [AR 97-100]. Regarding Plaintiff's exertional limitations, Dr. Coleman wrote Plaintiff could "occasionally lift and/or carry: 10 pounds" and "frequently lift and/or carry: 10 pounds." [AR 98.] Dr. Coleman's restrictions also included a ten-pound lifting limit, standing or walking for four hours a day, occasional climbing of stairs, ramps, ladders, ropes, and scaffolds, occasional kneeling, crouching, and crawling, and frequent reaching, handling and fingering. [AR 98-100.] Dr. Coleman further opined Plaintiff demonstrated "the maximum sustained work capability for" sedentary work. [AR 101.] He also stated if Plaintiff had successful left and right knee replacements, "she would be doing great within a year." [AR 100.] Subsequently, Plaintiff had her left knee replaced in February 2017, and the right knee replaced in September 2017. [AR 399 and 402.]

In the ALJ's decision, he accepted all of Dr. Coleman's restrictions except for the sedentary work/10-pound lifting restriction. [*Compare* AR 17 with 97-100]. His RFC instead finds Plaintiff can perform "light work," which the regulations define to involve "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). In making this finding, the ALJ assigned "little weight" to Dr. Coleman's opinion because "evidence received at the hearing level showed the claimant had bilaterally total knee replacements and had equal strength with a normal gait[,]" and her "knees had a full range of motion after the replacement (Exhibit l0F/4, 11F, 14F)." [AR 19.] Thus, contrary to Dr.

Coleman's opinion, the ALJ concluded the evidence did not support a limitation to the sedentary level of work. [*Id.*]

Plaintiff argues Dr. Coleman's sedentary restrictions are relevant because they are much more limiting than the ALJ's RFC restrictions, and Dr. Coleman's restrictions would trigger a finding of disabled under the "Grid Rules" once Plaintiff turned fifty in 2017. [Dkt. 15 p.11]; 20 CFR Part 404, Subpart P, Appendix 2. Plaintiff claims the ALJ had "no evidence to support [his] . . . conclusion that equal strength, normal gait, and normal range of motion would contradict Dr. Coleman's ten-pound lifting restriction, especially when they do not contradict his four-hour limit on standing and walking." [Dkt. 15 p.17.]

The question is whether substantial evidence supports the ALJ's rejection of Dr. Coleman's 10-pound restriction. An ALJ is barred from making inferences from medical reports and may only reject an opinion if there is medical evidence to the contrary. *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). To be sure, the factors to consider in weighing opinions from medical sources include: (1) how long the source has known the individual, (2) how frequently the source has seen the individual, (3) how consistent the opinion is with other evidence, (4) the degree to which the source presents relevant evidence to support an opinion, (5) how well the source explains the opinion, (6) whether the source has a specialty or area of expertise related to the individual's impairment(s), and (7) any other factors that tend to support or refute the opinion. *Salazar v. Barnhart*, 468 F.3d 615, 624 (10th Cir. 2006); *see also* 20 C.F.R. § 404.1527(c)(1) – (6).

9

While the ALJ did not walk through all of these steps, he explained his reasons for rejecting the 10-pound restriction. In addition to the reasons the ALJ assigned "little weight" to Dr. Coleman's opinions (discussed above), he further explained:

> While claimant does have osteoarthritis in her bilateral knees, osteoarthritis in her bilateral hands, mild bilateral carpal tunnel syndrome, bilateral shoulder pain, and mild degenerative disc disease of the cervical spine, the actual objective findings on examination are not that significant so as to render her disabled. An EMG showed only mild bilateral carpal tunnel syndrome. [Exhibit 10f/26] Upon examination, she has equal strength with a normal gait and noted rheumatoid nodules in her hands. Her knees had a full range of motion. [Exhibit 14F] She had a full range of motion of her right shoulder, and she had active range of motion of all other joints. [Exhibit 12F/4]. A cervical MRI showed mild cervical spondylosis without evidence of spinal stenosis and moderate foraminal narrowing at C6-C7 with no cord compression or signal abnormalities. [Exhibit 8F/2-3]. The claimant had an intact range of motion with her spine and no joint tenderness, normal muscular development, and a normal gait. She had normal strength and sensations with no significant joint abnormalities. She had a normal range of motion of all of her extremities without tenderness. [Exhibit 2F/2].

[AR 19.]

The Court is not persuaded the ALJ's rejection of the 10-pound lifting restriction is backed by substantial evidence. While the particulars cited by the ALJ may suggest Plaintiff's condition improved after having both knees replaced, there is no record evidence correlating her improved condition to an improved functional capacity beyond what Dr. Coleman has opined. And as Plaintiff points out, Dr. Coleman's opinion on functional limitations is the *only* medical opinion in the record on the subject of Plaintiff's functional capacity. Without more, the ALJ's rejection of Dr. Coleman's lifting restriction appears to be the impermissible substitution of lay opinion. *See Fleetwood v. Barnhart*, 211 Fed. Appx. 736, 741 (10th Cir. 2007) (holding

ALJ's assessment was conclusory and unsupported with reasoning, requiring a remand for additional information regarding functional limitations); *McGoffin*, 288 F.3d at 1252 ("[T]he ALJ's unfounded doubt that Dr. Luc agreed with the assessment he signed, in the face of unrefuted evidence to the contrary, was error."); *Morales v. Apfel*, 225 F.3d 310, 318 (3d Cir. 2000) ("The ALJ cannot, as he did here, disregard this medical opinion based solely on his own 'amorphous impressions, gleaned from the record and from his evaluation of [the claimant]'s credibility.'") (internal citation omitted).

To be sure, the same medical record [AR 471-76] the ALJ relies on to downplay Dr. Coleman's opinion also indicates Plaintiff's then-current diagnosis and assessment was chronic right and left knee pain. [AR 472, 475.] Another medical record the ALJ relied on indicates Plaintiff is "walking on her right leg using a walker." [AR 389]. While relying on portions of these records to support his rejection of Dr. Coleman's lifting restriction, the ALJ did not explain these potential inconsistencies, their materiality (if any), or how they did or did not factor into his decision to disregard Dr. Coleman's opinion. *See Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) ("[T]he ALJ relied on portions of medical reports that tended to support a finding of non-disability and therefore contradicted Dr. Khalid's opinion, but she ignored other portions of the same reports that confirmed some of Dr. Khalid's observations and tended to support her conclusions. This was error, because although an ALJ is entitled to resolve conflicts in the record . . . she may not 'pick and choose among medical reports, using portions of evidence favorable to [her] position while

11

ignoring other evidence,' . . . or mischaracterize or downplay evidence to support her findings[.]") (internal citations omitted).

Defendant argues the ALJ's rejection of Dr. Coleman's lifting restriction is harmless error, and argues "even if . . . the ALJ did not have good reasons for rejecting Dr. Coleman's opined ten-pound lifting limitation, the testimony of the vocational expert nonetheless warrants affirmance in this case." [Dkt. 18 p.5]. Defendant adds that the vocational expert testified an individual with all of Dr. Coleman's stated limitations, including the 10-pound lifting restriction, could perform the same light jobs the VE identified for an individual with a 20-pound lifting restriction. [*Id.*] Finally, Defendant concludes the Court should not reverse here because it "would lead to unwarranted remands needlessly prolonging administrative proceedings." [*Id.*]. None of these arguments are persuasive.

"To deem an error harmless in the social-security context, the court must be able to say with confidence that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Jones v. Berryhill*, 720 Fed. Appx. 457, 459 (10th Cir. 2017) (internal citations omitted). Because the ALJ impermissibly substituted lay opinion for Dr. Coleman's medical opinion regarding Plaintiff's lifting restrictions, a reasonable administrative factfinder applying the correct analysis could have resolved this matter in Plaintiff's favor. Indeed, as stated by the Grid Rules, "Individuals approaching advanced age (age 50-54) may be significantly limited in vocational adaptability if they are restricted to sedentary work. When such individuals have no past work experience or

can no longer perform vocationally relevant past work and have no transferable skills, a finding of disabled ordinarily obtains." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(g). And, as Plaintiff argues, applying Dr. Coleman's restrictions would trigger applications of the Grid Rules when Plaintiff turned 50, potentially resulting in a disability finding. For these reasons, the error is not harmless, and Defendant's other arguments do not overcome the error here committed by the ALJ.

## CONCLUSION

For the reasons set forth above, the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion. Plaintiff is awarded her costs, to be taxed by the Clerk of Court pursuant to Fed. R. Civ. P. 54(d)(1).

DATED: September 23, 2021.

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge